# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| JUAN ROSAS,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF LANSING, LANSING POLICE DEPARTMENT, and KURT KUHLERS,<br><br>    Defendants. | No. C04-1053<br><br>**ORDER** |

_____

This matter comes before the court pursuant to the defendants' January 13, 2006 motion for partial summary judgment (docket number 9). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c). For the reasons set forth below, the defendants' motion is granted in part and denied in part.

The plaintiff, Juan Rosas ("Rosas"), alleges that the defendant, Chief of the Lansing Police Department, Kurt Kuhlers ("Chief Kuhlers") unlawfully arrested, detained, and restrained Rosas against his will. Rosas also alleges that Chief Kuhlers assaulted him during this arrest. Finally, Rosas alleges that Chief Kuhlers violated his Fourth Amendment rights when he used excessive force during an unlawful seizure and that the policies and/or customs of the City of Lansing were a cause of this constitutional violation.

The defendants move for summary judgment arguing: (1) there is no evidence that Chief Kuhlers intended any harmful or offensive contact with Rosas; (2) Chief Kuhlers is entitled to qualified immunity with respect to Rosas' claims under 42 U.S.C. § 1983; (3) there is no evidence that the City of Lansing had any policy or custom which could serve as the basis for imposition of liability under 42 U.S.C. § 1983. Rosas resisted the defendants' motion on February 6, 2006 (docket number 15).

1

# I.  SUMMARY JUDGMENT: THE STANDARD

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law.  Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir. 1986).  Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact."  Noll v. Petrovsky, 828 F.2d 461, 462 (8th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  Although "direct proof is not required to create a jury question, . . . to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'"  Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985) (quoting Impro Prod., Inc. v. Herrick, 715 F.2d 1267, 1272 (8th Cir. 1983)).  In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence.  Krause v. Perryman, 827 F.2d 346, 350 (8th Cir. 1987).

# II.  STATEMENT OF MATERIAL FACTS

At all material times, Rosas was a resident of Lansing, Iowa, and defendant Chief Kuhlers was employed by defendant City of Lansing as Chief of Police.

At approximately 6:00 p.m. on June 11, 2004, Rosas entered Chief Kuhlers' office at the Lansing Police Department for the purpose of checking on the status of the department's investigation into the alleged harassment of Rosas' son by another citizen.  During their conversation, Chief Kuhlers became angry and told Rosas to leave the police station.  Rosas left the police station and returned to his minivan, parked approximately ten feet from the door to the police department.  Rosas' wife and 12-year-old daughter

were waiting for him in the van. When Rosas returned to the van he explained to his wife that Chief Kuhlers had told him that he needed tangible evidence to assist in the investigation. Rosas' wife asked him what "tangible evidence" meant and Rosas proceeded back into the police station to ask Chief Kuhlers what he meant by that statement.

When Chief Kuhlers saw Rosas returning, he ordered him to get out of the police station. Rosas turned around and walked out of the police station and approached his van. Chief Kuhlers followed Rosas out of the police station in order to arrest him for trespassing. As Chief Kuhlers approached Rosas, Rosas was attempting to enter the van through the sliding door. Chief Kuhlers shut the door to prevent Rosas from entering the van and Rosas' fingers got shut in the sliding door. As he was shutting the door, Chief Kuhlers informed Rosas that he was under arrest and immobilized Rosas by pulling his right arm behind his back in order to place handcuffs on him. Once the sliding door was opened, Chief Kuhlers handcuffed Rosas' left arm. Rosas' left hand was bleeding due to being caught in the door, so Chief Kuhlers led Rosas to his squad car where he bandaged Rosas' hand with supplies from the first aid kit located in the trunk of his car. Chief Kuhlers then transported Rosas to the Veterans Memorial Hospital in Waukon, Iowa, for treatment before taking him to the Allamakee County Jail where he was charged with trespassing and interference with official acts.

### III.  CONCLUSIONS OF LAW
#### A.  ASSAULT

Iowa Civil Jury instruction 1900.2 defines assault as: "(1) an act intended to put another in fear of physical pain or injury; (2) an act intended to put another in fear of physical contact which a reasonable person would deem insulting or offensive; and the victim reasonably believes that the act may be carried out immediately." Iowa Civil Jury Instruction 1900.2 (citing <u>State v. Straub</u>, 190 Iowa 800, 180 N.W. 869 (1921); restatement of Torts (Second) §§ 21, 31, 32).

Battery is committed when a person intentionally does: "(1) an act resulting in bodily contact causing physical pain or injury;(2) an act resulting in bodily contact which a reasonable person would deem insulting or offensive." Iowa Civil Jury Instruction 1900.3 (citing Restatement of Torts (Second) §§ 13, 18).

Iowa Courts have, at times, used the Iowa Criminal Code definition of assault in determining the elements of assault and battery in a civil action. Doe v. Hartz, 52 F. Supp. 2d 1027, 1052 (N.D. Iowa 1999) (citing Bacon v. Bacon, 567 N.W.2d 414, 417 (Iowa 1997)). Under Iowa Criminal Code a person commits an assault when, without justification, the person does any of the following:

> (1) Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparent ability to execute the act.
>
> (2) Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

Iowa Code § 708.1(1) and (2) (2003).[1] Thus, the elements of assault are essentially the

---

[1] Rosas contends that Bacon v. Bacon, 567 N.W.2d at 417, held that assault was a general intent crime and, thus, Chief Kuhlers may be held liable for assault solely based on the act of closing the van door regardless of his subjective desire to shut the door on Rosas' fingers. The defendants assert that in State v. Heard, 636 N.W.2d 227 (Iowa 2001), the Iowa Supreme Court overruled its previous decision in Bacon and found that assault under section 708.1 is a specific intent offense.

However, Heard concerned only section 708.1(2). Heard only overruled the court's prior holding that assault was a general intent crime as to the assault alternative in section 708.1(2), holding that it "clearly requires an intent to achieve some additional consequence." Heard, 636 N.W.2d at 231-32. Thus, Iowa case law leaves us with the presumption that Bacon still rules as to section 708.1(1). Therefore, assault as to section 708.1(1) is a general intent crime and assault as to section 708.1(2) is a specific intent crime. However, it must be noted under both assault alternatives, "an actor will ordinarily

(continued…)

same under civil law and criminal law.

The facts as to Chief Kuhlers' intent are disputed by the parties. Chief Kuhlers contends that he shut the van door to prevent Rosas from entering the van and in shutting the door, Rosas inadvertently got his hand stuck between the door and the door jam. Chief Kuhlers asserts that Rosas opened the door himself to free his left hand and that Chief Kuhlers only put handcuffs on Rosas after his hand was freed.

Rosas contends that Chief Kuhlers slammed the van door shut as Rosas was attempting to get into the van, which may reasonably be expected to result in the door being shut on Rosas. Rosas also alleges that Chief Kuhlers immobilized his right arm behind his back while his left hand was still stuck in the door. Rosas asserts that Chief Kuhlers also handcuffed Rosas' right arm while his left arm was stuck in the door, using the door as a restraint on his left hand. Rosas contends that Chief Kuhlers only let go of the door, releasing Rosas' left hand, so he could put Rosas' left hand in handcuffs.

The facts taken in a light most favorable to Rosas show that Chief Kuhlers used the shut van door as a vice in order to immobilize Rosas so he could more easily put him into handcuffs. A reasonable juror could find that this was an intentional act which resulted in physical pain or injury. Thus, this court finds that Rosas has created an issue of material fact and the defendants' motion for summary judgment as to Rosas' assault claim is denied.

## B. QUALIFIED IMMUNITY

A government official who performs discretionary functions is protected from suit under the doctrine of qualified immunity as long as the official's conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would

---

[1](…continued)
be viewed as intending the natural and probable consequences that usually follow from his or her voluntary act." State v. Taylor, 689 N.W.2d at 132 (citing State v. Bedard, 668 N.W.2d, 598, 601 (Iowa 2003)).

have known.  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) (citations omitted).  Once an official asserts an affirmative defense of qualified immunity on summary judgment, the burden shifts to the plaintiff to: (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of material fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right.  Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996) (citing Foulks v. Cole County, Mo., 991 F.2d 454, 456 (8th Cir. 1993)).  A court must generally view the facts in a qualified immunity claim on summary judgment in the light most favorable to the party asserting the injury.  Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  If there are disputes concerning predicate facts material to the qualified immunity determination, summary judgment is not appropriate.  Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8th Cir. 1994) (citations omitted).

"[T]he first question is, taken in the light most favorable to the party asserting the injury, do the facts alleged show that the officer's conduct violated a constitutional right?" Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005) (citing Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2002)).  Rosas claims that Chief Kuhlers used excessive force in effectuating his arrest.  When an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons . . . against unreasonable . . . seizures' of the person." Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

Therefore, this case must be analyzed under the Fourth Amendment's "objective reasonableness" standard.  Craighead, 399 F.3d at 961 (citing Graham, 490 U.S. at 388, 109 S. Ct. 1865).  More specifically, this court must ask "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without

6

regard to their underlying intent or motivation." Craighead, 399 F.3d at 961 (citing Graham, 490 U.S. at 397, 109 S. Ct. 1865).

Chief Kuhlers contends that he told Rosas to stop many times as Rosas left the police station and walked towards his van. He also asserts that he only shut the door to prevent Rosas from entering the van and avoiding arrest. Chief Kuhlers alleges that Rosas' hand accidentally got in between the van door and the door jam and he released Rosas' hand before putting him in handcuffs. If these facts are true, Chief Kuhlers is only guilty, at most, of negligence. Section 1983 requires an intent upon the government official to deprive a person of a constitutional right. Thus, negligence is an insufficient basis for imposing liability under § 1983. County of Sacramento v. Lewis, 523 U.S. 833, 847, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (citing Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct.662, 88 L. Ed. 2d 662 (1986); Davidson v. Cannon, 474 U.S. 344, 348, 88 L. Ed. 2d 677, 106 S. Ct. 668 (1986)).

However, the facts alleged, taken in the light most favorable to Rosas show that Chief Kuhlers' use of force was objectively unreasonable. The evidence most favorable to Rosas shows that Rosas left the police station at Chief Kuhlers' behest. Rosas contends that he did not hear Chief Kuhlers telling him to stop and was not aware that Chief Kuhlers was following him out of the building. Rosas asserts that he only became aware that Chief Kuhlers was behind him when Rosas' wife informed him that Chief Kuhlers was approaching. Rosas alleges that he was attempting to get into his parked van when Chief Kuhlers slammed the door shut, trapping Rosas' hand was between the door jam and the sliding door. Rosas contends that Chief Kuhlers only informed Rosas he was under arrest as he was closing the sliding door. Rosas asserts that did not resist arrest and was cooperative; however Chief Kuhlers twisted his right arm behind his back and put handcuffs on. Chief Kuhlers only opened the sliding door, freeing Rosas's left hand, in order to put his left arm in handcuffs.

This court finds that, under the facts taken in the light most favorable to Rosas, an objectively reasonable police officer would not shut the van door on a suspect as he was

attempting to enter the van, immobilize the suspect and put him in handcuffs while the suspect's hand was still trapped in the door.

The second inquiry is whether the right to be free from seizure by excessive force was clearly established at the time of the alleged injury. "A right is clearly established when that right is so clear that a reasonable official would understand that what he is doing violated that right." Id. at 962 (citing Saucier, 533 U.S. at 202, 121 S. Ct. 1865). Though both questions center on the reasonableness of the officer's conduct, "[t]he key distinction between the two questions is that the right allegedly violated must be defined at the appropriate level of specificity before a court can determine whether it was clearly established." Id. (citing Saucier, 533 U.S. at 202, 121 S. Ct. 1865; Brosseau v. Haugen, 543 U.S. ___, 125 S. Ct. 596, 599-600, 160 L. Ed. 2d 583 (2004); Wilson v. Layne, 526 U.S. 603, 615, 119 S. Ct. 1692, 1700, 143 L. Ed. 2d 818 (1999)).

Neither Rosas nor the defendants have cited a case with substantially similar facts to the case at bar, nor has this court found one. "Nonetheless, 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" Id. (quoting Hope v. Pelzer, 536 U.S. 730, 741, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)). Thus, the issue is whether prior cases would have put a reasonable officer on notice that the use of force in these circumstances would violate Rosas' right not to be seized by the use of excessive force. Id.

The Eighth Circuit has held that "[t]he use of any force by officers simply because a suspect is argumentative, contentious, or vituperative" cannot be reasonable. Agee v. Hickman, 490 F.2d 210, 212 (8th Cir. 1974), cert denied, 417 U.S. 972, 94 S. Ct. 3178, 41 L. Ed. 2d 1143 (1974). Moreover, the Eighth Circuit has expanded this by holding that "[f]orce can only be used to overcome physical resistance or threatened force." Id. See also Feemster v. Dehntjer, 661 F.2d 87 (8th Cir. 1981) (force is unreasonable without provocation after a plaintiff has submitted to arrest); United States v. Harrison, 671 F.2d 1159 (8th Cir. 1982), cert. denied, 459 U.S. 847, 103 S. Ct. 104, 74 L. Ed. 2d 94 (1982) (even when the plaintiff's injuries are minor, lack of provocation or lack of need to use

force makes any use of force excessive); Bauer v. Norris, 713 F.2d 408 (8th Cir. 1983) (where there is no evidence that the plaintiff physically resisted or physically threatened an officer at the time of arrest, verbal abuse is not enough to justify any use of force). These cases put officers on notice that they may not use physical force in the absence of physical resistance or physical threats by the plaintiff or where the plaintiff submits to arrest. Rosas' right not to be seized using excessive force was clearly established with sufficient specificity to meet the second prong of Saucier. Craighead, 399 F.3d at 963.

Chief Kuhlers' use of force "cannot be viewed in isolation, but must be considered in the context of all the circumstances leading up to the arrest and detention of [Rosas]." Bauer, 713 F.2d at 412. Chief Kuhlers claims that Rosas shouted obscenities and insults at him both times he entered the police department. Chief Kuhlers also claims that he told Rosas to stop several times as he was leaving the police station and continued to command Rosas to stop as he walked towards his car. Chief Kuhlers contends that Rosas resisted arrest by knocking away the handcuffs, but admits that Rosas never threatened physical contact with him.

Rosas claims that Chief Kuhlers said nothing to him as he walked out of the police station and that he did not even know that Chief Kuhlers had followed him out until his wife informed him. Rosas claims that he never resisted arrest, was not aware he was under arrest until after Chief Kuhlers shut the van door on his hand, and fully submitted to the arrest.

It is clear that profanity or other oblique, offensive language alone is not grounds for an officer to use force against the plaintiff to arrest him. Assuming *arguendo* that the plaintiff's conduct was nothing more than verbal outbursts, Chief Kuhlers' application of force was unreasonable, thereby precluding the grant of qualified immunity. Summary judgment on qualified immunity is inappropriate where "[t]he current record does not conclusively establish the reasonableness of the officer's actions or beliefs." Wilson v. City of Des Moines, 293 F.3d 447, 454 (8th Cir. 2002). Accordingly, summary judgment on the basis of qualified immunity is denied.

## C. MUNICIPAL LIABILITY

The Eighth Circuit Court of Appeals has observed that "a plaintiff seeking to impose [municipal] liability is required to identify either an official policy or a widespread custom or practice that caused the plaintiff's injury." Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998) (citations omitted). The purpose of this is to ensure that a municipality is exposed to liability for only constitutional violations "'resulting from the decisions of its duly constituted legislative body or those officials whose acts may fairly be said to be those of the municipality.'" Id. (quoting Bd. of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). The plaintiff must prove that the alleged policy "was the moving force behind the constitutional violation." Rogers v. City of Little Rock, Ark., 152 F.3d 790, 799 (8th Cir. 1998) (quoting Jane Doe A. v. Special Sch. Dist., 901 F.2d 642, 646 (8th Cir. 1990)).

Where official policy is lacking, municipal liability may be established under 42 U.S.C. § 1983 "through proof that the alleged misconduct was so pervasive among the non-policymaking employees of the municipality 'as to constitute a "custom of usage" with the force of law.'" McGautha v. Jackson County, Mo., Collections Dept., 36 F.3d 53, 56 (8th Cir. 1994) (quoting Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). To prevail under this theory, the plaintiff must show "that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." Rogers, 152 F.3d at 799 (citations omitted).

Rosas does not argue that there is an official policy that caused his injury. Rosas also does not argue that city officials had knowledge of prior incidents of widespread police misconduct and failed to take action. Instead, Rosas argues that the municipality can be held liable based solely on Chief Kuhlers' actions in this particular case because St. Louis v. Prapotnik held that if policymakers approve a subordinate's decisions they are essentially ratifying his decision and should be held liable for it. Plaintiff's Brief at 13. However, this assertion mischaracterizes the holding of St. Louis v. Prapotnik. The

Supreme Court held that a municipality may be liable for the actions of a subordinate on a single instance only if it can be shown that the proper authorities in some way delegated their policymaking authority to the subordinate. St. Louis v. Prapotnik, 485 U.S. 112, 130, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1998) (internal citations omitted). The applicable law flowing from the decision is as follows:

> Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy. It is equally consistent with a presumption that the subordinates are faithfully attempting to comply with the policies that are supposed to guide them. . . . [T]he mere failure to investigate the basis of a subordinate's discretionary decision does not amount to a delegation of policymaking authority. . . . In such circumstances, the purposes of § 1983 would not be served by treating a subordinate employee's decision as if it were a reflection of municipal policy.

Id. Thus, if Rosas cannot prove an official policy or a widespread custom or practice or that city officials ignored prior incidents of misconduct, he must prove that the authorized policymakers in some way delegated their authority to Chief Kuhlers.

Article 15 of the City of Lansing Code of Ordinances states that the police chief shall be appointed by the Mayor, subject to the approval of the City Council, and that the Mayor may dismiss the chief of police as he sees fit. Section 15.07 describes the powers and duties of the police chief which include protecting the rights of persons and property, enforcing all laws, and to report to the council and the Mayor upon request. Nowhere in Article 15 is the police chief given any power to determine policy. While it is true that all police officers exercise a great amount of discretion as to their own actions, Rosas has not brought forward any evidence that Chief Kuhlers used his position as police chief to influence an overall policy. Rosas has also not presented any evidence that the municipality had delegated its policymaking authority to Chief Kuhlers. Rosas only contends, using conclusory statements, that if Chief Kuhlers is not punished by the municipality, this sends a clear signal that the municipality condones his conduct and this

suffices to establish a policy, custom, or practice required for municipal liability. Plaintiff's Brief at 13.

The court finds that the plaintiff has not shown that his constitutional injuries were the result of an official policy or widespread custom of the City of Lansing for which it may be held liable. Even viewing the facts in a light most favorable to Rosas, he has made no showing that Chief Kuhlers was acting pursuant to any express or implied city policy or, alternatively, that he was acting under delegated policymaking authority. The plaintiff's mere allegations fail to state a claim for which relief can be granted under a § 1983 claim against the City of Lansing. The defendants' motion for summary judgment on the plaintiff's claim against the City of Lansing is granted.

Upon the foregoing,

IT IS ORDERED that the defendants' motion for summary judgment (docket number 9) is granted in part and denied in part.

April 4, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT